# Richmond.

## MILLER'S ADM'R v. POTTERFIELD & ALS.

### MAY 8th, 1890.

1. WILLS— *Construction— Case at bar.*—Testator gave his wife all his property to hold for her own use and dispose of as in her judgment she might deem best, should it become necessary, for the support of herself and W. G., whom he desired to remain with her during her lifetime, and have such care given him as he might need. After her death, testator willed that all the property should be given W. G. *Held,* wife takes a life estate, with a conditional power of sale.

2. IDEM—*Devise for life—Power to dispose of.*—Where a power of disposal accompanies a bequest or devise of a life estate, whether such estate be given expressly or by implication, the power is limited to such disposition as a tenant for life may make, unless there are other words clearly indicating that a larger power was intended.

3. CASES DISTINGUISHED.—*Case at bar* is one to which *Shermer* v. *Shermer,* 1 Wash., 266, and other cases down to *Cole* v. *Cole,* 79 Va., 251, do not apply, as in each of those cases an absolute power of disposal was given to the first taker, which necessarily rendered the limitation over repugnant and void.

Appeal from decree of circuit court of Loudoun county, rendered April 27, 1889, in the cause wherein Luther H. Potterfield, administrator of Frederick Miller, deceased, was complainant, and William Garrett, a person of unsound mind, by his guardian *ad litem,* and others, were defendants. Opinion states the case.

*Edward Nichols* and *W. W. & B. T. Crump,* for the appellants.

*Foster & Nelson,* for the appellees.

LEWIS, P., delivered the opinion of the court.

This suit was begun in the circuit court of Loudoun county by the administrator of Elizabeth Miller, deceased, for a construction of the will of Frederick Miller, the deceased husband of the plaintiff's intestate, and to have the estate administered under the direction and supervision of the court.

Frederick Miller died in the county of Loudoun in the year 1877, seized and possessed of a house and lot containing about one and a half acres of land, situate near the village of Lovettsville, in that county, and a small amount of personalty. His will, which was duly admitted to probate, bears date July 3, 1876, and contains the following clause:

"I give and bequeath to my beloved wife, Elizabeth Miller, all my property, both real and personal, to have and to hold the same for her own use and benefit, and also to make such disposition of the same that she in her judgment may deem best, should it become necessary that a part or all should become necessary for the support of herself and William Garrett, who I desire should remain with her during her lifetime, and have such care and attention given him as he may need. After the death of said Elizabeth Miller, I will and devise that any and all property remaining unused shall be given to said William Garrett, to have and to use for his own benefit, or to make such disposition of as may be deemed best for his interests."

The question to be determined is, whether, under this clause of the will, Elizabeth Miller, who survived her husband, took a fee simple in the real estate, and an absolute title to the personalty, as the circuit court held, or whether she took a life estate only. The latter view is, we think, the correct one.

In support of the decree, the appellees rely upon the case of *May* v. *Joynes,* 20 Gratt., 692, and other familiar cases in this

court of that class, beginning with *Shermer* v. *Shermer*, 1 Wash., 266, and coming down to *Cole* v. *Cole*, 79 Va., 251. But, without meaning to question the authority of those cases, we are of opinion they do not apply, and that the present case must be govered by its own circumstances. In each of those cases an absolute power of disposal was given to the first taker, which necessarily, according to a well settled and undisputed rule of law, rendered the limitation over repugnant and void. Thus, in *May* v. *Joynes* the testator gave the estate to his wife for life, *but* "with full power to make sale of any part thereof, and to convey absolute titles to the purchasers, and use the purchase money for investment, or any purpose that she pleases, with only this restriction, that whatever remains at her death shall" be divided, etc. It was held that these words manifested a clear intent to give to the wife an absolute control over the estate, and consequently enlarged the life estate into an absolute estate. But no such power is given by the will under consideration in this case, and hence there is an obvious distinction between this case and the cases just referred to.

The will, as is by no means uncommon in cases of wills, is inartificially drawn; but, taking the whole of it together, it shows very clearly the intention of the testator. Like as was said by Judge Carr of the will construed in *Madden* v. *Madden*, 2 Leigh, 377, "there are no technical words or forms of expression in it. It is evidently the production of a plain man, who, though he understood very well what he meant to say, and was able to express himself quite intelligently, knew nothing of legal forms or phrases. To ascertain his meaning, we must not look to treatises on wills or to adjudged cases, but to the words he has used."

In addition to the words, however, we may look to the surrounding circumstances—as, for example, the situation of the parties, the ties which connected the testator with the objects of his bounty, and the motives which probably influenced him in disposing of his property. *Colton* v. *Colton*, 127 U. S., 300;

*Hatcher* v. *Hatcher*, 80 Va., 169. And if we construe the will before us in this light, the intention of the testator, which has not inaptly been termed "the polar star of construction," becomes too plain to be misunderstood.

As appears from the record, the testator died at an advanced age, leaving an aged widow, but no child or descendant. William Garrett was a person of weak mind, about forty years of age, and, as the will discloses, was an object of the testator's anxious solicitude. In his early infancy he had been taken by the testator and his wife, and reared in their family; and they not only furnished him with a home and supplied his moderate wants, but they bestowed upon him, as the evidence shows, parental care and affection as well. Although weak in mind, he was strong in body, and capable of doing hard manual labor. He worked the garden, cut wood, cultivated the lot, and did much other work about the house, such as cooking, washing, etc., and was occasionally employed as a farm hand in the neighborhood. In this way, independently of his services at home, he earned from fifty to seventy-five dollars a year, which was received by the testator in his lifetime, and after his death by the widow. In fact, he was for years "the main support" of the family, as he unquestionably was of the widow until her death.

It does not appear that the testator had any relatives of his own, or that there was any motive or reason on his part for wishing his property, under any circumstances, to go to his wife's relations. If the latter ever rendered any service or showed any attention to the aged couple, the record does not disclose the fact. It does show, however, that the old people "would have gone to the poor-house" but for the help of Garrett, as their income from other sources was altogether inadequate for their maintenance and support. What, then, more natural than that the testator, in disposing of his property, should have selected, as an object of his bounty, the unfortunate, faithful and well-beloved Garrett? Indeed, the dictates

of humanity and justice alike required that he should; and we think he has effectually done so. The estate, however, was too small to be divided, so he left a life estate to the wife and a remainder to Garrett, making provision also for the latter during the lifetime of the former, and thus in all respects seeming to have been influenced by motives which may very reasonably be supposed to have operated with him.

At all events, his intention is too clearly manifested to be mistaken. The language of the will is, "I give and bequeath to my beloved wife all my property, both real and personal, to have and to hold the same for her own use and benefit." Now, if the testator had stopped here, the widow, undoubtedly, would have taken an absolute estate. But the will proceeds as follows: "and also to make such disposition of the same that she in her judgment may deem best, should it become necessary that a part or all should become necessary for the support of herself and William Garrett, who I desire should remain with her during her lifetime, and have such care and attention given him as he may need." This language restrains and qualifies that which precedes it, and confines, as it was obviously intended to confine, the power of disposal to the single case mentioned—that is to say, it was intended the widow should have the *use* of the property for life, but the power to dispose of it she was not to have, unless a sale, in her judgment, should become necessary for the support of herself *and Garrett.* In that event, and in that event only, was she authorized to dispose of the *corpus* of the estate. And this is made even more plain by that which follows, namely: "After the death of said Elizabeth Miller, I will and devise that any and all property remaining unused shall be given to said William Garrett, to have and to use for his own benefit," etc.

It is contended, however, that the words "all property remaining unused," in the last quoted sentence, import absolute ownership, and there is no doubt that the same, or similar words in other wills have been so construed. But, as

already remarked, we are not to be governed by adjudged cases in construing this will, but by the intention of the testator, for it is *that* which gives the law of the case, if it be not inconsistent with any rule of law. Indeed, it had been seriously questioned by eminent judges whether, in the construction of wills, adjudged cases do not oftener mislead than correctly guide the judicial expositor in arriving at the testator's intention. But be that as it may, they should never be allowed to disappoint the intention, if effect can be given to it.

As we have seen, there are no technical words or phrases in the will before us; and, besides, to use the language of Mr. Justice Miller, in *Clarke* v. *Brown's Ex'ors*, 18 Wall., 493, "of all legal instruments, wills are the most inartificial, the least to be governed in their construction by the settled use of technical legal terms, the will itself being often the production of persons not only ignorant of law, but of the correct use of the language in which it is written."

The principle applicable here is well stated in a recent work on wills, as follows: "The gift of what remains undisposed of may often be repugnant to the first gift, or too nearly so to vest a certain right; nevertheless, a gift is good of what shall remain at the death of the first taker, if the latter has only a life estate given him, or if such gift is preceded by a power of disposition so restrained in its exercise that the gift of what is left refers evidently to what shall remain unappropriated and unappointed under the power." Schouler, Wills, sec. 592. See, also, Keyes on Chattels, sec. 170 (quoted with approval in *Randolph* v. *Wright*, 81 Va., 608); *Hood* v. *Haden*, 82 Va., 588.

This principle is illustrated by the case of *Smith* v. *Bell*, 6 Pet., 68. In that case there was a bequest to the testator's wife, "to and for her own use and benefit and disposal absolutely," remainder at her death to the testator's son; and it was held that the bequest to the son cut down the interest of the wife to a life estate. The subject was very fully considered by Chief Justice Marshall, in delivering the opinion of the court,

and it was held that, although the power of disposal given the wife was in terms absolute, yet that, taking the whole will together, and construing it in the light of the surrounding circumstances, the meaning evidently was *such disposal as a tenant for life may make.* In the course of the opinion, referring to the force of adjudged cases, the chief justice said : "The construction put upon words in one will has been supposed to furnish a rule for construing the same words in other wills, and thereby to furnish some settled and fixed rules of construction which ought to be respected. We cannot say that this principle ought to be totally disregarded, but it should never be carried so far as to defeat the plain intent, if that intent may be carried into execution without violating the rules of law."

It has been supposed that that case lays down a different doctrine from that established by the decisions of this court and analogous cases elsewhere, and accordingly its authority, as was said in *Cole* v. *Cole,* has been questioned, as the cases there cited show. But upon a careful examination of the case, it will be found, we think, that there is really no such conflict between the cases as has been supposed; and the case has been unqualifiedly reaffirmed by the supreme court of the United States in subsequent cases.

Thus, in *Brant* v. *Va. Coal & Iron Co.,* 93 U. S., 126, a testator devised and bequeathed to his wife all his estate, "to have and to hold during her life, and *to do with as she sees proper* before her death"; and it was held that she took a life estate, with only such power of disposal as a tenant for life can have. "The language used," said the court, "admits of no other conclusion; and the accompanying words, 'to do with as she sees proper before her death,' only conferred power to deal with the property in such manner as she might choose, consistently with that estate, and, perhaps, without liability for waste committed."

So in *Giles* v. *Little,* 104 U. S. 291, a testator provided in his will as follows: " To my beloved wife I give and bequeath all

my estate, real and personal, of which I may die seized, the same to remain and be hers, with full power to dispose of the same as to her shall seem proper, so long as she shall remain my widow; upon the express condition that if she shall marry again, then it is my will that all of the estate herein bequeathed, or *whatever may remain*, shall go to my surviving children." The widow conveyed the real estate, and afterwards married; and it was held, upon the authority of *Smith* v. *Bell* and *Brant* v. *Va. Coal and Iron Co.*, that the estate of the purchaser determined on her marriage. "To hold otherwise," it was said, "would be to suppose that the testator, in drafting his will, was governed by abstruse rules of law in regard to the effect of his expressions, of which, it is probable, he never heard, and had not the slightest conception."

The case of *Morford* v. *Dieffenbacker*, 54 Mich., 593, was decided upon the same principle. In that case a testatrix devised certain real estate to her mother for life, with power, in case the property should prove insufficient for her support, to dispose of so much of it as might be necessary for that purpose, and then provided that *whatever might remain* at her death should go over to a cousin. It was contended that the mother took a fee; but the court, speaking by Cooley, C. J., held otherwise, saying she took a life estate only, with a conditional power of sale.

A still stronger case is *Bibbens* v. *Potter*, 10 Ch. Div., 733, decided in 1879. In that case the testatrix devised all her estate to a sister "for her own use and benefit absolutely," and afterwards by a codicil to her will, which she directed to be taken as a part thereof, said: "After the death of my sister, I give and bequeath all property of mine which *may then be remaining* to my brother"; and it was held by the Vice-Chancellor that the effect of the codicil was to cut down the gift to the sister to a life estate.

Numerous other cases to the same effect might be cited. They all show, as was said in the Brant case, that where a

power of disposal accompanies a bequest or devise of a life estate, whether such estate be given expressly or by implication, the power is limited to such disposition as a tenant for life can make, unless there are other words clearly indicating that a larger power was intended. See *Bradley* v. *Westcott,* 13 Ves., 445; *Smith* v. *Snow,* 123 Mass., 323; *Minot* v. *Prescott,* 14 *Id.,* 496; *Boyd* v. *Strahan,* 36 Ill., 355; *Terry* v. *Wiggins,* 47 N. Y., 512; *Walker* v. *Pritchard,* 121 Ill., 221; *Madden* v. *Madden,* 2 Leigh, 377; *Johns* v. *Johns,* 86 Va., 333.

As this view of the subject is decisive of the case, no other question need be considered. The decree must, therefore, be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Decree reversed.