# Wytheville

## NANNIE K. TRICE AND OTHERS V. C. G. POWELL, ETC. AND OTHERS.

June 10, 1937.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*McGuire, Riely & Eggleston, Robert H. Sykes* and *W. C. Bibb*, for the appellants.

*William A. Cooke*, for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This case involves an interpretation of the last will and testament of G. W. Goodwin, admitted to probate on November 26, 1907. The only portion in controversy, the other portions being only the usual formal clauses, is the second clause, which is in the following language:

"2ND: That I give and bequeath to my sister, Nannie Goodwin, all money & bonds and the entire landed estate to do as she thinks proper, so long as she remains single, but if she marries it is to be sold and divided between the heirs of body of Julia D. Kuper, Mattie W. Powell & Robert Goodwin, and she to retain one-fourth of said sale, and in the event of her death intestate, it is to be divided as above stated."

The testator left surviving him, in addition to his sister, Nannie Goodwin, two other sisters, Julia D. Kuper and Mattie W. Powell and a brother, Robert Goodwin. They are all deceased, having died prior to the death of Nannie Goodwin, leaving heirs of their bodies as follows:

The heirs of Julia D. Kuper are Nannie Kuper Trice and Gussie Kuper Hillyer; the heirs of Mattie W. Powell are C. G. Powell and his assignors, R. H. Powell and Mattie Powell Trice; and the heirs of Robert Goodwin are Winifred Goodwin and Marguerite Goodwin: all being nieces and nephews of the testator and his heirs-at-law.

Nannie Goodwin never married, and died in the year 1931. By deed dated December 10, 1907, she conveyed to Nannie K. Trice, her niece, and the wife of A. Garrett Trice, all of the real estate situated in Louisa county, Virginia, of which Goodwin died seized and possessed. This consisted of about three hundred and fifty acres, and constituted practically all of the real estate. The deed recited that whereas the grantor was unable to manage and utilize the said land, but was desirous of retaining a home thereon, the property was conveyed in consideration of $4,000, to be thereafter paid as evidenced by a reserved vendor's lien, and upon the further consideration of certain other terms and conditions therein specified.

These conditions, among others, provided that Nannie Trice and her husband should take immediate possession of the said property, and furnish to the grantor "lodging and all other incidents of comfortable home except clothing;" and that the grantor would also make a will devising the same real estate to Nannie Trice. Certain other provisions covering the situation if Nannie Goodwin married, or became dissatisfied with her home with the grantees, became inoperative because she remained unmarried and continued to make her home on the property until her death.

In compliance with the terms of the deed, Nannie Goodwin further made a will dated December 28, 1917, which was admitted to probate on December 7, 1931, in which she devised and bequeathed unto Nannie K. Trice, all of her property, real and personal, including specifically the reserved vendor's lien above mentioned, and in which she further ratified and confirmed unto the said Nannie K. Trice, in fee simple, the lands conveyed in the aforementioned deed.

There is nothing to show the amount of money and bonds passing under G. W. Goodwin's will, and as that will did not cover tangible personal property, that character of property is not involved herein. The principal subject of the controversy is the title to the tract of three hundred and fifty acres of land in Louisa county.

In 1933, C. G. Powell in his own right, and as the assignee of R. H. Powell and Mattie Powell Trice, the other heirs of Mattie W. Powell, and Marguerite Goodwin, instituted this action in chancery against Nannie K. Trice, A. Garrett Trice, Gussie K. Hillyer and Winifred Goodwin, praying for a construction of the said will, and an accounting by certain of the defendants.

The complainants alleged in their bill that Nannie Goodwin took only a life estate in the real and personal property under the will, with remainder to the heirs-at-law of the testator, or to the heirs of the body of the other persons named therein. The defendants filed a joint and separate demurrer to the bill, which the trial court overruled. The defendants contended that Nannie Goodwin took an estate in fee simple, subject to

be defeated, either by her marriage, or by her death intestate, and that this defeasible fee became absolute by the non-happening of the limitations by which her title was to be defeated.

The case was heard only on the pleadings and exhibits filed therewith. In construing the will, the trial court held and so decreed that Nannie Goodwin took only an estate for life, but terminable on her marriage; that had she married, she would have been entitled to retain one-fourth of the proceeds in the event of a sale of the said estate, with power to devise the said one-fourth, the pronoun "it" in the last clause of the will referring to the words "one-fourth" in the preceding clause; that never having married, the estate terminated at her death; and that G. W. Goodwin died intestate as to the remainder, which descended to his heirs.

From this decree Nannie K. Trice and A. Garrett Trice have prosecuted this appeal, in which they have been joined by Gussie K. Hillyer, one of the heirs of the body of Julia D. Kuper.

Since the will of G. W. Goodwin took effect before the act of June 26, 1908 (Acts 1908, ch. 146, amending Code 1887, § 2418), and the Code revision of 1919, amending section 5147 of the Code of 1936, this section has no application to the case under review. *McCready* v. *Lyon*, 167 Va. 103, 187 S. E. 442; *Bristow* v. *Bristow*, 138 Va. 67, 120 S. E. 859.

Counsel for both parties in their briefs have cited to us many cases from Virginia and other jurisdictions, involving the interpretation of wills. We have not been cited, however, to any case involving exactly the same language, nor the precise points in question here. The rules and principles governing the interpretation of wills have been so frequently considered by this court, and so firmly fixed, that it will not be necessary to resort for assistance to precedents from other jurisdictions. The general rules of construction will assist us as a guide; but, after all, each case must be governed by its own facts and circumstances.

Once we are able to ascertain the intention of the

testator, we will adopt that as the polar star to guide and direct us, and in ascertaining that intention, we will look upon the instrument as a whole, and give effect, if possible, to every part thereof. If from reading the will as a whole, the testator's intention is clear, it will stand as written; but if such intention is obscured by his modes of expression, we will first ascertain the meaning of the language used before we undertake to effectuate that intention. We will not hesitate to give to the words and phrases used the meanings they have in the usual and ordinary acceptation. If we discover the intention of the testator, even though the language be obscure and uncertain, we shall feel justified in making his will the law of the subject, unless it violates some rule of law. *Conrad* v. *Conrad's Ex'r*, 123 Va. 711, 97 S. E. 336, 337; *Davis* v. *Kendall*, 130 Va. 175, 107 S. E. 751, 759.

Since Miss Goodwin died unmarried and testate, we are principally concerned with the meaning, intention and effect of the language conveying the property to her, "to do as she thinks proper," with a gift over upon the happening of the contingencies mentioned.

In Virginia, prior to 1908, under the so-called doctrine of *May* v. *Joynes*, 20 Gratt. (61 Va.) 692, it was well settled that even though there be a devise of estate for life, nevertheless, if it was coupled with an absolute power of disposition, either express or implied, a fee simple or absolute estate became vested in the first taker, because such a power of disposal is inconsistent with any limitation upon the estate.

In *Davis* v. *Kendall*, *supra*, the whole subject, and many of the prior cases are reviewed. The doctrine has been so frequently referred to, and followed so many times by this court, that no further discussion is needed here.

In the case here, the will does not devise an estate for the natural life of the first taker, in terms either express or implied, as in *May* v. *Joynes*, *supra*, and related cases. These prior cases are cited as authority for the foregoing principle of law and for the purpose of determining the construction to be placed upon the language alleged to create the power of disposal annexed to the devised estate.

In *Hunter* v. *Hicks*, 109 Va. 615, 64 S. E. 988, 991, property was conveyed to a trustee for the benefit of a wife for life, with power to her to have the property sold, and then to "make such disposal of the proceeds of the sale as she may think proper." This was held to create a fee simple estate to the wife.

In *Crutchfield* v. *Greer*, 113 Va. 232, 74 S. E. 166, certain property was left by a wife to her husband "to dispose of as he may wish." It was held that this passed a fee simple title to the husband.

In *Smith* v. *Smith's Ex'r*, 122 Va. 341, 94 S. E. 777, there was a gift by a testator to his wife "for and during her natural life, to be used and enjoyed by her as she may think proper, as fully as if the same were hers in fee simple," and then with provision at her death for a gift over to her children. This was held to be a fee simple estate.

In *Barnett* v. *Blain*, 126 Va. 179, 101 S. E. 239, 240, there was a gift of a life estate in personal property, followed by the language that the beneficiary should have the "privilege of disposing of the personal property during her life, as she may think proper and to use the proceeds thereof for her comfort." The doctrine of *May* v. *Joynes*, *supra*, was applied, and the beneficiary was held to take an absolute estate.

In *Conrad* v. *Conrad's Ex'r*, *supra*, the testator, a distinguished lawyer, after making certain provisions for the sale of his real estate and the investment of the proceeds, further directed that the interest on said investments be collected by his wife as executrix, and applied to the support of herself and children, and then provided in another clause: "But should such income, in the opinion of my executrix, prove inadequate for that purpose, then she may use the principal to any extent that she may desire." It was held that the latter clause gave to the wife the unlimited and unrestricted use of the principal of his estate, and, consequently, an absolute estate therein.

Judge Burks, in this connection, there said: "If words or phrases are used which have a well defined legal significance, established by a line of judicial decisions, they will have been

presumed to have been used in that sense, in the absence of evidence of a contrary intent, especially when used by one having knowledge of such significance."

Judge Saunders, in emphasizing a distinction between language conferring an absolute right to dispose of an estate, and language conferring a power of appointment, said, in *Davis* v. *Kendall, supra:*

"The wife is not given the absolute right 'to use the entire estate for any purpose she pleases', or 'to appropriate it as she may deem just and right', or 'to do with it as she may think proper', or 'for her own comfort and convenience as she may choose', or 'to possess and enjoy the said property, as if she enjoyed a fee simple and absolute estate', or the like, either expressly or by inevitable implication; but after the gift of the life estate, a large one be it remembered, for 'her sole use and benefit so long as she lives', the succeeding phrase is 'and at her death to be disposed of as she may deem proper and think best'."

Is it not evident that the opinion in the above case would have been different had the property there been given to the wife "to do with as she may think proper"? If we add the words "with it" and "may" to the clause "to do as she thinks proper," in the case before us, there will not be any difference in the substantive matter of the language employed. The use of such words is fully implied, and we may safely add them without doing violence to the general thought of the testator.

Appellees rely upon *Miller's Adm'r* v. *Potterfield*, 86 Va. 876, 11 S. E. 486, 19 Am. St. Rep. 919; *Brant* v. *Virginia, etc., Co.*, 93 U. S. 326, 23 L. Ed. 927; *Johns* v. *Johns*, 86 Va. 333, 335, 10 S. E. 2; *Bristow* v. *Bristow, supra,* and cases from other States.

The *Miller Case* was overruled by this court in *Hansbrough* v. *Trustee of Presbyterian Church*, 110 Va. 15, 65 S. E. 467. In that case, Judge Lewis cited the *Brant Case* in support, and noted a variance apparently existed from the doctrine of *May* v. *Joynes, supra,* a variance which he did not disapprove.

In the *Johns Case,* the wife was to hold the estate during her life for the benefit of herself and her children "to be used

as she may think proper." The court construed the word "used" as not importing absolute dominion and ownership, but only such a use as was consistent with the life estate. So, in the *Bristow Case,* emphasis was placed on the word "used", which occurred after a devise by a husband of all of his estate to his wife "to use as she pleases during her life and while she remains a widow." It was held the word "use" did not import a power of disposition.

There are other cases cited, which sustain the point that where property is devised to a person for life, to be used as the taker may think proper, such right to *use* the property is limited to the needs of the taker *during life* and confers no greater power of disposal than the measure of the estate conveyed.

Some of these cases contain either a provision for a gift over of what remains at the death of the first taker, or a provision that the property shall not be subject to the debts of the first taker, or some other language strongly indicating that the testator intended to confer no greater power of control or use than such as would be consistent with that possessed by a life tenant.

Taking up the words, phrases and clauses one by one, we find that the testator first gave and bequeathed to his sister, Nannie Goodwin, "all money and bonds and the entire landed estate to do as she thinks proper, so long as she remains single," etc. If the will had stopped after the word "estate", there is no question but that a fee simple would have been conveyed, words of limitation being no longer necessary in this State. But since the will does not stop there, we must construe the meaning and effect of the words which follow. It should be noted here that the word "do" is employed and not the word "use". The word "think", in general, is defined by the dictionaries to have a meaning equivalent to "consider," "believe," or "conclude". Evidently, what she should "do" with the property, was left to her discretion as to what she considered, believed, or concluded proper. The word "do", read in connection with language following it, has a broader meaning than the word "use". It does not confine her to a

mere use of the property for her benefit, but imports an enlarged control and right thereover. It cannot be conceived that anyone could have a greater or more extensive power over property than the right to do with it as he or she may think proper. The several words import all the attributes of a fee simple, which is absolute except for the provision terminating it. Nor can we take away such a valuable right, so explicitly conferred, without good reason therefor.

We then arrive at the conclusion, that whether we end the clause after the word "estate", or after the word "proper", a fee simple estate is conveyed, subject only to such limitation as is placed thereon by the language "so long as she remains single," annexed thereto. These latter words mark out the utmost period during which the estate conveyed to her may endure. The clause "but if she marries," is but another expression confining the disposition of the estate to a period "so long as she remains single." Both clauses, "but if she marries," and "in the event she dies intestate," are words of defeasance with a meaning so clear and distinct that little doubt can be entertained that they established a special limitation upon the fee simple.

 Mr. Minor, in his excellent treatise on Real Property, holds that when a conveyance is made in fee simple under a special limitation, we have a fee qualified. "A special limitation is itself a part of the original limitation, marking out or describing the utmost period during which the estate may endure, that is, until the event happens, which of itself terminates the estate. A special limitation is created by the use of such words as 'until' or 'as long as' or 'while' or 'during.'" Minor on Real Property, sections 168 and 540. Other authorities and textwriters refer to the fee qualified, or base fee, as a defeasible fee.

In *Vaughan* v. *Vaughan's Ex'x*, 97 Va. 322, 33 S. E. 603, 604, this court was called upon to construe the following provisions in a will: "I do hereby bequeath to my wife, Emma Lee Vaughan, and to my children all my property of every kind, real and personal, and do hereby appoint my wife my sole executrix, without security, as long as she shall remain

my lawful widow; should she marry again the minor children to choose guardians, and my wife in that event to take a child's part, to be hers as long as she lives, and at her death, to be distributed among my children then living." It was held that the wife took a fee simple in the whole of the real estate, and an absolute title to the whole personal property liable to be defeated "should she marry again," and unless she married, the children took no estate under the will in the property of the testator.

"A devise to a testator's widow, which is absolute except for a provision terminating the estate, or providing for a gift over, in the event of her remarriage, creates a defeasible fee subject to be defeated by her remarriage." 69 Corpus Juris, Wills, section 1557.

■■ "It is generally held that, where an estate has been devised in fee, subject to be defeated by the happening of some future event or contingency, if the happening of such event or contingency becomes impossible of occurrence, the defeasible fee becomes a fee simple absolute. A defeasible fee will be enlarged into a fee simple absolute upon the death of the first devisee prior to the happening of the event or contingency by which alone his estate can be defeated, and which event or contingency cannot possibly occur after his death." Id. section 1559.

There have been many cases in Virginia of defeasible fees created by wills, in which the above principles of law have been applied. In *Peoples National Bank* v. *Crickenberger*, 159 Va. 264, 165 S. E. 412, a testator devised property to his wife for life, and at her death the whole estate to go to her son, with a proviso that should he die without heirs, the estate was to be divided among the testator's surviving children or their heirs. It was held that the son took a fee defeasible on his death without issue. In *Kemp* v. *McGuire*, 112 Va. 715, 72 S. E. 686, the testatrix left an estate to her daughter after the death of her father, and provided that if she should die without a husband, or issue, the property was to go as provided in another portion of the will. There Keith, President, speaking for the court, held that the daughter took an estate in fee, liable

to be divested upon her dying without a living husband, or issue, and that if she had a living husband, or issue at the time of her death, her estate became an absolute fee simple.

But since we must construe the will as a whole, we will look at the remaining clauses, to ascertain the effect, if any, upon the first clause. The next clause beginning with, "but if she marries, it is to be sold and divided * * *, and she to retain one-fourth of said sale," never became effective, because of the non-happening of the contingency. The word "it" therein clearly refers to the whole estate given in the clause of the will next above. Since it is impossible to give effect to this clause, it is illuminating only in showing the intent of the testator, that in the event of his sister's marriage he desired the property to be equally divided among certain kindred, because marriage would presumably afford his sister, Nannie Goodwin, an added measure of support and maintenance.

The last clause, "and in the event of her death intestate, it is to be divided as above stated," never became effective if the pronoun "it" referred to the words "one-fourth" in the immediately preceding clause, because there was no marriage to set up a one-fourth division. If the word "it" therein referred to the whole estate given in the first clause, then it is an added recognition of the right of Nannie Goodwin to make an absolute disposition of the property by her last will and testament. It, too, is illuminative only of the intention of the testator to divide the property equally among his named kindred, in the event that she died unmarried without disposing of the property by her last will and testament.

The language of the will evidences no desire of the testator to prevent his sister from marrying, or to penalize her therefor, but does evidence an intention to provide for her unless and until she married. He preferred her in the disposition of his estate, and so devised it that its possession, control and use was under her sole discretion. He made no provision for his remaining sisters and brother. A contingent provision for the heirs of the bodies of his sisters and brother, was subject to the happening of a certain event, or events. The event of marriage having been avoided, the second event, if based upon

its occurrence, could not be applicable; and, therefore, we must disregard its effectiveness entirely, or assume that the testator intended the question of intestacy to refer to the entire estate. To adopt the construction that the last pronoun "it" referred to "one-fourth of the proceeds in the event of a sale after marriage," would create the result that Nannie Goodwin could have received, if she married, only a defeasible fee, or less, in one-fourth of the estate, while each set of the heirs of the other three beneficiaries, would have received an absolute one-fourth estate. Such a construction is inconsistent with the other language of the testator.

Here there was a disposition of an estate, subject to the happening of either one of two contingencies, the one of marriage being within the discretion of the first taker to avoid, if the opportunity presented itself, and the other of intestacy being solely within her power and discretion to prevent. Whether such discretion was exercised or not, the power to exercise it was conferred by the testator.

Neither of the subsequent events occurring, upon the happening of which the limitations were to apply, we are unable to give effect to either of them; but we can, and will, give effect to the testator's intention as expressed in the language of the will as a whole. His action in making a will and the language employed by him both aid in the presumption against his intestacy as to any portion of the devised estate. While the case is close, and not without its difficulties, we are satisfied on the whole, and after giving effect to every part of the will where possible, under all of the facts and circumstances, that Nannie Goodwin took a qualified or defeasible fee in the estate devised, which became an absolute fee upon her death, unmarried and testate.

For the reasons herein given, the decree of the trial court is reversed and this cause remanded for a decree to be entered in accordance with this opinion.

*Reversed and remanded.*