538

Charles D. Deane et al.

v.

Dorothy Tennyson et al.

Case No. (Chancery) 2013

By Judge Paul M. Peatross, Jr.

November 4, 1993

This matter came on to be set for trial at the civil docket call of this Court on the 12th day of October, 1993; and it appearing to the Court that this matter has been set for trial without a jury on March 24, 1994, at 9:30 a.m., the Court orders as follows.

1. The Court sets 30 days prior to trial as a deadline for completion of all discovery by the parties, and the term "completion of discovery" shall require that discovery requests be propounded in such time as to require a *timely* response on or about the date established as the last day for discovery permitted by this order.

2. If requested in discovery, the party of whom the request is made shall disclose experts three weeks prior to the discovery cutoff, including any opinions required by Rule 4:1 of the Supreme Court of Virginia. If more than two experts are to be disclosed by the plaintiff, plaintiff must disclose such experts six weeks prior to the discovery cutoff, including opinions as aforesaid.

3. All demurrers or motions for summary judgment shall be filed and scheduled for a hearing by the Court not later than 14 days prior to the trial date.

4. All motions to amend pleadings shall be filed and heard by the Court 30 days prior to the trial date.

5. The parties shall exchange written instructions of law for jury cases three days prior to the trial date and file a copy of the original instructions with the Court three days prior to the trial date.

August 9, 1994

This cause comes before the Court on a request for the construction of the will of Clara V. Deane concerning certain real estate located in Greene County.

### Findings of Fact

Clara V. Deane (hereinafter Clara) died in 1953, leaving a will which was put to record on December 11, 1954. In paragraph two of the will, Clara devised a tract of land containing approximately eighteen acres in fee simple to her son, Russell K. Deane (hereinafter Russell):

> To my son, Russell K. Deane . . . I give and devise in fee simple
> all of that tract or parcel of land lying and being in the county of
> Greene, Virginia, and bounded and described as follows . . . .

In the same paragraph, Clara explained her reasons for making the gift to Russell: (1) Russell had been of great assistance to her in the years preceding her writing the will and (2) he bore a financial liability which Clara's other children did not have, caring for an invalid daughter, Marjorie.

After Clara's death, Russell and his wife, Blanche M. Deane (hereinafter Blanche), resided on the property in question. In 1964, Russell and Blanche conveyed approximately 2.36 acres of the property to the State Highway Department of the Commonwealth of Virginia; they received all the proceeds of that sale. In 1979, their daughter, Marjorie, died. In 1986, Russell died intestate, survived by Blanche, who continued to reside on the property until her death in 1992.

Blanche's will, recorded on February 10, 1992, purports to devise and divide the property among Barbara Ann Grover, Hazeltine Deane, Dorothy Tennyson (hereinafter Tennyson), Buddy Deane, Wayne Deane, and Charles D. Deane. Tennyson, however, claims sole ownership of the eighteen acre tract under Clara's will, which Tennyson asserts vested no more than a life estate in Blanche. The language upon which Tennyson bases her claim appears in paragraph four of Clara's will:

> In the event of the death of my son, Russell K. Deane, if prior to
> that of his wife, Blanche Deane, I hereby desire and instruct that

tract of land mentioned in item no. 2 be conveyed to his widow as long as she remains his widow, otherwise or at her death, I further desire and instruct that this tract of land be conveyed equally to all of my remaining children.

Tennyson claims that paragraph four creates a defeasible fee and argues that when Russell predeceased Blanche, Blanche received only a life estate in the property. Tennyson further argues that upon Blanche's death, the remainder of the property reverted to her (Tennyson) as Clara's only remaining child.

The Complainants, on the other hand, argue that the language of paragraph four is sufficiently vague to render it impotent. Accordingly, Complainants contend that upon Russell's death, his fee simple title in the property passed to his wife and that upon Blanche's death, the property should pass according to the terms of her will.

## Questions Presented

I. Whether or not paragraph four of Clara Deane's will creates in Russell Deane a defeasible fee subject to the condition that Russell survive his wife, Blanche.

II. If so, whether the phrase "all my remaining children" should be interpreted to allow the descendants of Clara Deane's children who predeceased Blanche to take, *per stirpes*, equal shares with Dorothy Tennyson, Clara's only surviving child at the time of Blanche's death.

## Discussion of Law

I. It is well settled that the paramount rule of testamentary construction is that the intention of the testator controls, unless it is contrary to an established rule of law. *Powell v. Holland*, 224 Va. 609, 615 (1983). To ascertain that intention, a court must examine the will as a whole and give effect to all of its parts, and ambiguity created by the language does not necessarily defeat that intention:

> Although the language in a will may be obscure and uncertain, if the testator's intention is ascertainable, his intention will prevail.

*Trice v. Powell*, 168 Va. 397, 401-02 (1937).

Clara Deane's will clearly reveals Clara's intention to make a special provision for her son, Russell. In paragraph two, Clara describes the special tract of land to be conveyed to Russell for his use. Paragraph three reveals Clara's intention to treat her children equally in all other respects

regarding the disposition of her estate. The issue before the Court centers on Clara's intention as expressed in paragraph four, and the Court finds that the very existence of paragraph four, as well as the language contained therein, discloses Clara's intention to create a defeasible fee in Russell.

If Clara had intended to grant Russell a fee simple absolute, paragraph four as it is written would not exist. Paragraph two, in and of itself, grants an absolute fee to Russell; and at his death, regardless of when he died, the land conveyed to him by Clara would pass as part of his estate. Clara, however, intended to provide for a special circumstance: the death of Russell "if prior to that of his wife Blanche." Thus, Clara created the defeasible fee which appears in paragraph four. If Russell predeceased Blanche, Blanche maintained the right to remain on the property until her death or remarriage; after her death or remarriage, the property would revert to Clara's children.

The Court does not accept the Complainants' proposition that paragraph four provides only for the death of Russell prior to Clara. The language simply does not support that proposition. The words "in the event of the death of my son, Russell," which appear in paragraph four, cannot be interpreted independently of the contingent language immediately following: "if prior to that of his wife Blanche." Clara does not mention the possibility that Russell might predecease her; the timing of Russell's death is juxtaposed with only the timing of Blanche's death. In short, the Court finds that the ambiguity which the Complainants perceive in paragraph four regarding the creation of a defeasible fee does not exist.

While Complainants argue that an interpretation granting a defeasible fee is "out of whack" with the rest of the will because it limits Russell's ability to transfer the property, the Court finds that by granting Russell a defeasible fee, Clara did provide Russell with a crucial component of caring for his daughter: a home. Moreover, Clara's creating a defeasible fee is consistent with Clara's desire to treat all of her children equally, as revealed in paragraphs three and four. By granting a defeasible fee contingent upon Russell's predeceasing Blanche, Clara ascertained before her death that while Blanche would have a home until her death or remarriage, Clara's property would eventually pass to her own children, not to those to whom Blanche might devise the property.

Moreover, the testatrix's use of the phrase "desire and instruct" in paragraph four does not introduce an ambiguity which would defeat her intention. In paragraph two, when devising the property to Russell, Clara used

the phrase "give and devise" regarding what was to be done with the property immediately upon her death; but in paragraph four, the testatrix addressed what was to be done with the land at some later time when Russell and his family had already been in possession of the land. Clara thus used the phrase "desire and instruct," indicating her awareness that she was speaking of a more remote time ("desire") while maintaining her control over the disposition of the land ("instruct"). The fact that no individual would actually "convey" the land to the remaining children at Blanche's death is immaterial, as Clara's will itself provides the authorization under which the property is conveyed automatically.

Thus, the Court finds that Clara's will created a defeasible fee, under which Russell's predeceasing his wife granted Blanche a life estate. Upon Blanche's death, the property passed to the remaindermen, Clara's remaining children.

II. For the interpretation of the phrase "remaining children," Complainants point the Court's attention to the "early vesting rule," which provides that "devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated in the will." *Clark v. Whaley*, 213 Va. 7, 8-9 (1972) (citing *Chapman v. Chapman*, 90 Va. 409, 411 (1894)). The Complainants argue that "remaining children" in the context of this case refers to those children living at Clara's death (all seven of them) rather than those living at the time of Blanche's death (only one, Ms. Tennyson).

However, as the rule itself states, the early vesting rule does not apply when the intention of the testatrix is clear from the will and the Court finds that Clara made her intentions clear. The text of paragraph four, *supra*, contains several indications that, in Clara's mind, the "remaining children" who would receive the land if Russell predeceased Blanche would be those who were living at Blanche's death. For example, the phrase which introduces the provision for the remainder to pass to the "remaining children" is "otherwise or at her [Blanche's] death"; this phrase seems quite time specific, as there could be only one point in time when Blanche either remarried or died.

Moreover, a contextual examination of paragraph four also indicates that Clara's intention was to grant the remainder to her children "remaining" at Blanche's death. In paragraph three, after granting the land in question to Russell, Clara specified that after all her expenses were paid, she granted all her other property "to all of my living children equally." In that context, in which she was clearly referring to the time of her own

death and the settlement of her estate, she used the word "living" to classify the children who were to take. In paragraph four, however, she replaced the word "living" with "remaining"; otherwise, the two phrases would be identical (save the placement of the adverb "equally"). Thus, it seems that Clara had in mind a time other than her own death regarding the remainder vesting in her children and that the children who gained possession of the remainder would be those who were living at that later time, Blanche's death.

The Complainants argue, however, that "[i]t is strained to say that Clara would leave it to chance whether any child would survive Russell's wife, and then intend to leave all of the real estate in question to that child." Instead, Complainants argue that Clara intended each child receive an equal share, whether personally or, if deceased, through his or her heirs via the anti-lapse statute, Va. Code Ann. § 64.1-64.1 (Michie 1991), and, furthermore, that the presumption of the law supports this contention:

> Where an ambiguity exists in a will, unless there is a manifest intention to the contrary, the presumption is that the testator intended that his property should go in accordance with the laws of descents and distributions.

*See, Blankenbaker v. Early*, 132 Va. 408, 412 (1922) (citation omitted). However, the *Blankenbaker* court went on to state the familiar rule that the intention of the testator is determined from the language which he used and that "[i]f the meaning of that language is plain, the will must be given effect accordingly." *Id*. On its face, the term "remaining" children in context seems plain. The Complainants may propose other theories about what Clara Deane would or would not leave to chance, but the language itself which Clara used in writing her will seems to indicate that she intended her children, not her grandchildren or some other more distant relatives whom she might not know, to inherit her estate after Blanche died.

## Conclusion

For the foregoing reasons, the Court finds that the language of Clara Deane's will reveals her intention to grant her son, Russell Deane, a fee simple defeasible subject to the condition that if Russell predecease his wife, Blanche, the property would, upon Blanche's death or remarriage, pass to Clara Deane's remaining children. The Court further finds that the phrase "remaining children" refers to those children of Clara Deane who

were living at the time of Blanche Deane's death, namely Dorothy Tennyson.

The request for partition and an award of attorney's fees is denied.