Anderson J.
delivered the opinion of the court.
Joseph W. Mason by his last will and testament, dated December 29, 1854, after authorizing his executor at his discretion, to sell his whole estate, real and personal, loans it to his wife Frances, for the purpose of supporting herself, and supporting and educating his daughter Rucy, until she attains to lawful age or marries. He then provides for the contingency of his wife marrying again, which contingency never happened. He then by the 4th clause declares, “Should my wife not marry, I wish when Rucy becomes of age or marries, one-half of my estate to go to my wife for life, and the other half to Rucy absolutely, and at the death of my wife the other half.” Rastly he appointed J. T. J. Mason, the appellant, his executor, and guardian *for Rucy, who made probate of the will on the 4th of January 1855, and qualified as executor; but as the bill alleges, declined the office of guardian.
In October 1866, Rucy, having then attained eighteen years of age, intermarried with J. B. Jones. In 1869 they filed their joint bill in chancery against Rouisa F. Mason, the widow of the said Joseph W. Mason, and J. T. J. Mason, his executor, and his securities, alleging that there was a balance of $16,785.67; in the hands of the said executor, of which the said female plaintiff was entitled to one-half, which was due and payable to her, on the 23d of October 1866, the date of her marriage; and praying a decree for the same, with interest from that date, against the party or parties liable therefor; .and further that the said executor be required to give additional security, to have the other moiety forthcoming at the death of the widow.
The executor answered, and admits his qualification as executor, and that he took possession of the money, bonds and other papers of his testator, and a small portion of the personal property, which he sold, leaving the land, slaves, and the bulk of the perishable estate, on the plantation in possession of the widow, according to the direction of testator’s will.
He proceeded to collect and pay off the debts of the estate as rapidly as he well could. The widow took possession of the land, slaves, and other estate left on the plantation, hired an overseer, hired out one or more of the negroes, sold the crops, and collected the money, and exercised entire control over the same for that year, 1855. Rate in that year, at her request, as he was authorized to do by the will, he offered the *99 land for sale, when the amount bid for it, not being as much as the widow thought it should sell for, she bought it herself, *at the price of $2,854, for which she executed her bonds, payable in one, two, and three years, the widow still keeping all the property, and absolutely controlling the same, until some time in the month of February 1856, when the executor, in the exercise of his discretion under the will, offered all the slaves and chattel estate for sale; at which sale she purchased all the slaves but two, and most of the perishable estate; and executed her bonds for the same, not paying one cent for the land, slaves, and perishable estate; and the whole remained unsettled until the fall of 1858.
On the 3d of June 1858 the executor settled his accounts with a commissioner of the court of Sussex county; which settlement was returned to the court and was confirmed, after lying one term without exception. In this settlement it seems that the executor was debited with the bonds executed to him by the widow for the land, slaves and other personal property; and the commissioner reported a balance against him on the 1st of July 1858, of $18,075.49; of which the sum of $1,289.52 was interest. The plaintiffs take no exception to this settlement, and seek not to disturb it.
On the 7th of October 1859, after the settlement aforesaid was confirmed by the court, the executor had a settlement with the widow, who executed to him her receipt in full, for the balance of interest due by him as executor as aforesaid, the same being due to her absolutely under the will of her deceased husband; and at the same time under her hand acknowledged the receipt from him of $16,785.67, the balance of principal in his hands. This constituted the whole estate after payment of debts, which was loaned to her by the testator, by his will. He also took her bond for the amount bearing interest from the 1st of July 1858.
*As a result of the war the slave property, which probably chiefly constituted the estate, perished, and the widow was unable to pay over to her daughter on her marriage, one-half the amount which had been loaned to her. How much she paid or turned over to her, does not appear from the record. The answer avers from information received, that the appellee Jones, soon after the marriage took possession of all the property lately belonging to the estate of Joseph W. Mason, and had a sale of the same, except the real estate, which he rented out, and had received considerable money in that and other ways, in part, or whole of the estate which he now claims.
According to this averment the widow had surrendered everything to her daughter’s husband, so that there was nothing found upon which the execution sued out by the executor against her upon the judgment which he had recovered against her in 1869 upon her bond aforesaid, could be levied; which tends to confirm the averment of the answer. He also avers that a proposition had been made to him by Jones,before he broug'ht this suit, that if the widow would convey to him the land he would accept it in full of his wife’s interest in the estate, and obligate himself to support her the balance of her life; which proposition she had agreed to accept, showing- a disposition on .her part to surrender to her daughter’s husband, not merely a moiety, but the whole of the estate which had survived the wreck of the war, and to be content with a mere support, which she would probably more than earn by assistance which she would render her daughter in her family.
There is nothing in the record to show that the female plaintiff would have been any better off if no sale had been made of the estate; or that she has lost *or her mother gained anything- by the sale, which the executor in his discretion might, or might not have made; or that she would have gained, if the sale had been made to a stranger; to which, however, the executor was in no manner restricted by the will. But if he had sold to a stranger the widow was entitled to the proceeds of the sale, by virtue of its being loaned to her by the testator; and whether she would have been able to have carried it, or any part of it, safely through a war which has wrecked the hopes and the fortunes of so many, is at least problematical.
But is the executor liable for the balance which was in his hands, and which he turned over to the widow, as is shown by her receipt? That is the main question. The decree appealed from holds him liable for the whole, without even an abatement-for what the plaintiffs may have received from the widow, since their marriage.
Not even an inquiry was directed • to ascertain the amount so received.
When property is vested in a trustee, and is trust property, and consists of stocks and other personal securities, it is conceded, that the trustee in whom the legal title is vested, must retain possession for the benefit of the remainder-man; but he may put the tenant for life in possession of the dividends, interest or income, by giving him a power of attorney to collect them as they become due. But the estate of Joseph W. Mason is not vested by his will in his executor in trust for his wife and daughter. By a fair construction of the will, if his executor should not sell, he lends his whole estate real and personal in kind, to his widow; if in the exercise of the discretion with which he is invested he should sell, he lends the proceeds of the sale to his widow'; in either case after payment of his debts, for the support of herself and *the support and education of his daughter, until she attains full age or marries; then to be equally divided, and one moiety to go to his wife for life, remainder to his daughter, and the other moiety to his daughter absolutely. He does not give it to his executor to be held in trust for such purposes. It is a loan directly to his wife, without the interven *100 tion of a trustee. Nor is it an authority to his executor to loan it to his wife, which might imply a trust reposed in his executor, but it is a confidence reposed by himself in his wife, by a direct loan to her. If there is a trust and confidence placed, it is in his wife, and not in his executor. If there is an implied trust it is in his wife, as the trustee, and not in the executor; and she alone was amenable to the person in remainder.
“If the title of the tenant for life is a legal and not an equitable title, he is of course entitled to the possession; but the tenant for life is in such case an implied, or quasi trustee for the remainder-man, and a court of equity can enjoin him from injuring the inheritance.” Perry on trusts | 540; Joyce v. Gunnels, 2 Rich. Eq. R. fj 259. This was the case of a devise of real estate and slaves, by the testator to his wife for life, remainder to all the children of his daughter. The court held that it now may be considex-ed as settled, that the tenant for life stands in the nature of a trustee to the remainder-man.
In Hovey v. Glover, 2 Hill Ch. R. 515, it was held that the tenant for life of slaves is bound tq-¿account, as a trustee for the remainder-man. It was also held in this case, that limitations of trusts of personalty are the creatures of equity, and it is by regarding the tenant for life as trustee of the remainder-man, that equity takes jurisdiction to compel the execution of the trust to the remainder-man.
The office of the executor in the case under judgment, *"was to collect and pay the debts and to make sale of. so much of th,e property as was necessary for the payment of debts, or the whole estate if in his discretion he deemed it to the interest of the estate to do so; and to turn over the residue of the estate, whether in kind or converted into money, to the widow to whom the testator had loaned it. This done he had completed the administration of the estate. He had discharged his executorial duty, and was functus officio. Kenney’s adm’ors v. Kenney & als., 25 Gratt. 293. The executor sold the whole estate to the widow. If she had paid cash for the px-operty he was required by the will to pay it over to her. It seems síie gave her bonds for the property which she never paid. But as she was entitled to the money, if she had paid off hex-bonds, she settled with the executor, and gave him her receipt in full for the whole balance in his hands, as money lent to her by the testator. This receipt was a full discharge to him as executor, at least as against legatees.
Judge Eomax says, “There may be a case, Eord Redesdale has observed, where executors would be Charged as against'creditors, though not as against legatees; for legatees are bound by the terms of the will, creditors are not; and, therefore, if the testator direct the executor to collect the assets, and pay the proceeds into the hands of A, which is done accofdingly, and A fails, if a creditor remain unpaid he may chax-ge the executors; but, as regards the legatees, the executors may justify themselves by the direction of the will. 2 Eomax on ex’rs, top p. 500, side p. 304; citing Doyle v. Blake, 2 Sch. & Lef. R. 229, 245. In this case the Eord Chancellor said, legatees are bound by the terms of the will; creditors ax-e not so; and therefore in many cases executors would be discharged *as against legatees, though not as against creditoi-s. Eor example, in the present case if these gentlemen (the executors) had collected the effects and had paid the amount to Martin Horan, (who afterwards became insolvent, to whom the will had directed it to be paid, for certain legatees,) still, if a cx-editor had i-emained unpaid, he might have charged them upon the insolvency of Horan; whereas in the case of a legatee, the executox-s might justify themselves by the dii-ections of the will.” We think the law as thus laid down is reasonable and just, and it is decisive of this case. As against the legatee the executor may justify the payment of the balance due the estate in his hands, to the widow by the will.
The execution of her bond to the executor could not create a liability in him which otherwise had not existed. The bond, although for the whole principal sum, and interest thereon from the 1st of July 1858, she could have dischax-ged, by the payment of only one-half the principal sum, to her daughter on her marriage. It would in equity have been a full discharge of the obligation. She would then be in possession of a life estate in the other moiety, and her daughter would be entitled to the remainder; and if any action of the court were necessary for its preservation, it‘could only be ttpon the application of the husband and wife, and not of the executor, who is functus officio. If thex-e ever was any sort of trust in the executor it is tex-minated, whether by operation of’ law, or by a surrender of the trxxstee to the cestui que trust, or a presumption of a surrender from the fact that the purposes of the trust are accomplished, and the property is vested in the cestui que trust, who may after that time maintain an action on the title. Perry on trustees g 328.
*The court is therefox-e of opinion that the appellant from anything that appears in this recox-d to the contx-ary, has faithfully executed the will of his testator, and thex-e is no liability on him to the legatees, or either of them, for or on account of the fund which he had placed in the hands of the depositoi-y to whom the testator had loaned it; that he acted under the directions of the will, and cannot be liable to either of the legatees, who are likewise bound by the will, and that the bill ought to be dismissed as to him and his sureties. Bxxt as Eouisa Prances Mason, the widow, may be liable to the plaintiffs, to what extent, it is not px-oper for this court to indicate, as it has not been passed on by the court below, the case will have to be remanded to that court, for further proceedings as against her, if desired by plaintiffs, *101 and dismissed as to the executor and his sureties with costs.
The court is therefore of opinion to reverse the decree of the Circuit court with costs, and to remand the cause.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the executor of Joseph W. Mason, the appellant, having tujrned over the whole of the estate in his hands to Louisa Frances Mason, the widow, to whom it had been loaned by the testator by his will, he is not liable therefor, or for any part thereof to the legatees. It is therefore ordered and decreed that the decree of the Circuit court of Sussex be reversed and annulled, and that the bill be dismissed as to the appellant and his securities, with costs; and that the appellees pay to the appellant his costs expended in the prosecution of his appeal here. And *the cause is remanded to the Circuit court of Sussex county for further proceedings to be had therein, if desired by the appellees, against Louisa F. Mason, in conformity with the opinion filed with the record.
Decree reversed.