## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### HAWTHORNE v. BECKWITH.

March 30th, 1893.

1. RES JUDICATA—*Rule in Shelly's Case.*—Where a court below construed a will as giving a life estate (the said rule not applying to executory limitations), and the construction, on appeal, was not drawn in question, but was approved by the appellate court, the question as to what estate passed by the will is *res judicata,* and the fact that the remaindermen were not parties to that suit is immaterial. This is on the ground of representation. *Baylor* v. *Dejarnette,* 13 Gratt. 152.

2. LIFE TENANTS—*Money borrowed.*—On giving proper security therefor, life tenants took the fund in which they had a life interest.

HELD :

They took it as borrowers, not as trustees, and their estates and the sureties on their bonds are liable therefor.

3. ESTOPPEL.—Where the validity of the limitation over in the will was recognized in the former appeal, in requiring new security from the life tenants, at the instance of those claiming as remaindermen, it cannot be claimed that the limitation was void for remoteness.

4. HUSBAND—*Liability—Wife's debt.*—A judgment against the husband during coverture for the wife's ante-nuptial debts is necessary under the common law rule to charge him therewith.

Appeal from decree of Brunswick county, rendered October 19th, 1891, in the cause wherein W. H. Hawthorne and others (the children of Henry C. Hawthorne, deceased,) were complainants, and Josiah Beckwith and others were defendants. The decree being adverse to complainants, they appealed. Opinion states the case.

*R. Turnbull,* for appellants.

*E. P. Buford* and *Davis & McIlwaine,* for appellees.

LEWIS, P., delivered the opinion of the court.

This is the sequel to *Beckwith* v. *Avery*, 31 Gratt. 533. The case may be shortly stated as follows:

By his will, which was duly admitted to probate in 1848, Asa Avery devised and bequeathed, after the payment of debts, the whole of his estate, real and personal, to Nancy E. and Mary J. Hawthorne for their lives, with a limitation over, in the event of their dying without children, to their brothers' and sisters' children. In 1849 the administrator *c. t. a.* filed his bill in the court below for a construction of the will and a settlement of the estate. The bill stated that he had sold the perishable property, and had delivered the lands and slaves to the life tenants. It was also stated that the latter wished to receive the money, but that he was unwilling to pay it over to them without their giving security for the payment of the principal at their deaths, and he prayed instructions of the court in the matter.

The life tenants, who were made defendants, answered, admitting the truth of the allegations of the bill, and saying they desired to receive the money without security being required of them.

The court, however, in construing the will, held that the defendants, being life tenants, were not entitled to possession of the money without security, and directed that the fund be paid to them, upon their executing bonds, with ample security, for the return of the principal at their deaths. The decree also directed that, in the event of their not electing to take the money on those conditions, then that it should be invested by the administrator in six *per cent.* Virginia state stock, the dividends to be received by the defendants, &c.

The defendants, electing to take the fund, it was afterwards paid to them by the administrator, upon their giving

bonds, with ample personal security, as required by the
decree. These bonds were returned by the administrator
with his report to the court, which was confirmed; and it
seems that the money was loaned by the defendants, who
took bonds with good personal security for its return at their
deaths. Nothing further that need be stated appears to have
been done in the case until in 1874, when, the sureties in
the bonds, or the most of them, having become insolvent, a
rule was awarded, on motion of a number of persons claiming
to be entitled under the will as remaindermen, against the
surviving life tenant and Josiah Beckwith, with whom she
had intermarried, to show cause why new and additional
security should not be required for the payment of the money
at her death, and, upon the return of the rule executed, a
decree was entered, requiring a new bond with good security
to be given, in the penalty of $10,000.

Upon appeal from that decree four points were expressly
adjudged—viz., (1) that Mrs. Beckwith, who was formerly
Nancy E. Hawthorne, took under the will a life interest; (2)
that the penalty of the bond required by the last-mentioned
decree was excessive; (3) that the proceeding by rule was not
a regular and proper one; and (4) that the cause ought to be
remanded, with liberty to the plaintiff in the rule to file a bill
in the nature of a supplemental bill; which was ordered
accordingly. In the opinion of the court, delivered by Mon-
cure, P., several reasons were given why the proceeding ought
to be by such a bill, instead of by a rule, the third of which
was "because the remaindermen, the only persons interested
in the fund except the tenants for life, were not parties to the
original cause."

After the cause went back to the circuit court, a supple-
mental bill was filed, soon after which Mrs. Beckwith died.
Mary J. Hawthorne had previously died, and both died with-
out children. Upon the death of Mrs. Beckwith, the remain-

dermen applied to the court by petition, which was treated as a bill in the nature of a supplemental bill, for an order requiring the bonds which had been given by the life tenants, as already stated, to be collected, and depositions were taken ; but when the cause came on to be again heard the bill was dismissed, and the case removed from the docket, by the decree complained of.

The principal grounds upon which this decree is sought to be maintained by the appellees are (1) that Nancy E. and Mary J. Hawthorne each took under the will, according to the rule in *Shelley's Case*, a fee tail, which the statute converted into a fee simple; and (2) that, conceding they only took life estates, they were trustees for the remaindermen, and that, having loaned the money on security, which was ample at the time, neither their estates nor the sureties in their bonds ought now to be held liable for the loss of the fund.

As to the first point, it is enough to say that the rule in *Shelley's Case* is not applicable to executory limitations. 2 Min. Insts. (4th ed.) 437. Besides, the circuit court having construed the will as it originally did, and that construction having been approved by this court, the question is *res judicata*, and must now be considered as finally and irreversibly settled. *Campbell* v. *Campbell*, 22 Gratt. 649 ; *Frazier* v. *Frazier*, 77 Va. 775 ; *Stuart & Palmer* v. *Preston*, 83 Id. 625 ; *Findlay* v. *Trigg*, Ibid. 539.

The appellees, however, contend that the doctrine of *res judicata* has no application, on the ground that the appellants were not parties to the suit when the case was before this court. But to this there are several answers. The first is that although they were not parties originally, they are bound by all the decrees in the case, because, until the death of the life tenants, their interests were altogether contingent, and " in no case is it necessary to make those persons parties who are entitled only to future and very uncertain and con-

tingent interests." 4 Min. Insts. 1246. Thus it has been repeatedly determined in England that if there be a tenant for life, remainder to the first son in tail, remainder over, and he is brought before the court before he has issue, the contingent remainder may be barred. Story Eq. Pl., § 792.

This is on the ground of representation, upon which ground *Baylor* v. *Dejarnette*, 13 Gratt. 152, proceeded. In that case Judge Lee, in delivering the opinion of the court, quoted with approval the remark of Lord Redesdale in *Gifford* v. *Hort*, 1 Sch. & Lef. 386, that " courts of equity have determined on grounds of high expediency that it is sufficient to bring before the court the first tenant in tail in being, and, if there be no tenant in tail in being, the first person entitled to the inheritance, and, if no such person, then the tenant for life." See also *Faulkner* v. *Davis*, 18 Gratt. 651 ; *Fitzgibbon* v. *Barry*, 78 Va. 755.

Besides, the fair inference from the record is that those of the appellants who were not before this court as persons claiming to be remaindermen were not then *in esse*. At all events, a number of the appellants were then actually before the court, and it was undoubtedly competent for them to sue for the benefit of those having a common interest with them. To the general rule that all persons in interest must be made parties to a suit in equity, Judge Story mentions several exceptions, the first of which is that, where the question is one of a common or general interest, one or more may sue or defend for the benefit of the whole. Story Eq. Pl., § 97.

The second position of the appellees, above mentioned, is also untenable. The life tenants, *quoad* the fund in question, were in no sense trustees for the remaindermen. They were borrowers of the fund, and the doctrine of *Elliott* v. *Carter*, 9 Gratt. 559 ; *Myers* v. *Zetelle*, 21 Id. 201, and of other cases of the same class, in regard to the management by trustees of the trust estate, has no application.

The modern doctrine, supported by the weight of authority, is that where there is a bequest of specific articles, not consumable in the use, such as books, plate, furniture, and the like, possession of which is essential to the beneficial enjoyment of the property, the life tenant is entitled to the possession, and is regarded (as was decided in *Tabb's Curator* v. *Cabell*, 17 Gratt. 160,) as a trustee for the remainderman; nor is security in such case required, unless there is danger of the property being wasted, or otherwise lost. But in regard to money or stocks, the rule is different. In that case the legatee for life is not entitled to possession of the *corpus*, but only to the profits, and it is the duty of the executor to invest the fund and hold it in trust until the termination of the life estate, unless, as was the case in *Mason* v. *Jones*, 26 Gratt. 271, a different intention appears from the will. "I take it," said Chief Justice Shaw, in *Field* v. *Hitchcock*, 17 Pick. 182, "that nothing is now better settled than that such a gift is a gift of the interest only, and, if no trustee is specially named, it is the duty of the executor to invest the money and pay the interest only to the person entitled for life, and preserve the principal for him who is entitled to take afterwards." See, also, 2 Lead. Cas. Eq. (4th ed.), notes to *Howe* v. *Earl of Dartmouth*, where the cases are collected.

So that in electing to take the fund in the present case, as the life tenants did, they took it, not as trustees, but as borrowers, and the obligations which they gave for its return are to be viewed in that light. Had they not so elected, the fund would have been invested as the court directed, and they would have received the interest, which is all to which under the will they were entitled. It appears, moreover, that they regularly received the interest for a number of years, the sums so received amounting in the aggregate to several thousand dollars. There is, therefore, no hardship in the case, or certainly much less than there would be were the loss held to fall on the innocent remaindermen.

Stress is laid by the appellees on the fact that no money was in fact paid to Mrs. Beckwith by the administrator, but that instead of money he delivered to her certain bonds for money due the estate. The effect, however, is the same as if the money represented by the bonds had been paid to her. The obligors in the bonds were confessedly solvent, and the arrangement by which the bonds were taken up and cancelled, upon the obligors executing in their stead other bonds for the payment of the principal sum at the deaths of the life tenants, and the interest thereon during their lives, was made with the assent of the life tenants. The record shows that the transaction was treated as a payment by the administrator to them of *money*, and it was so treated by this court. 31 Gratt., p. 546.

Another point made by the appellees is that the limitation over in the will is void for remoteness. But this question, also, must be regarded as settled by the former appeal. By the decree from which that appeal was taken, the validity of the limitation was in effect recognized, in requiring new security, at the instance of those claiming as remaindermen, and although this court reversed the decree, for the reasons already stated, yet it also virtually recognized the validity of the limitation in remanding the cause, as it did, with liberty to those persons to regularly proceed " to have the said money secured, if necessary, and to *recover it* for distribution among themselves," upon the happening of the event that has since happened—viz., the dying of the life tenants without children. If the limitation was void, they would have had no standing in court at all, and it would have been improper to remand the cause for further proceedings on their part. The validity of the limitation, therefore, is not now to be questioned.

Only a word need be added in regard to the first bond executed by Nancy E. Hawthorne, who afterwards intermarried

with the appellee, Beckwith. This bond was not signed or executed by Beckwith, but the appellants contend that he is nevertheless liable on it, on the principle of the common law that the husband is chargeable with the ante-nuptial debts of the wife. This rule, however, is subject to an important qualification—viz., that to charge the husband, judgment must be recovered against him during the coverture; and here no judgment was recovered during the coverture. 1 Min. Insts. (4th ed.) 364.

It follows that the decree must be reversed, and the cause remanded for further proceedings in conformity with this ·opinion.

DECREE REVERSED.