## Richmond

### GRACE ELOISE LOVE AND FRANCES COOPER LOVE v. WILLSON B. ROPER ET AL.

June 18, 1956.

Record No. 4525.

Present, All the Justices.

The opinion states the case.

*John Joseph Baecher* and *O. Eugene Pinion* (*M. Watkins Booth*, on brief), for the appellants.

*Charles Edgar Gilliam (Frederick H. Cole, Philip Freeman, William Earle White* and *J. Thompson Wyatt,* on brief), for the appellees.

HUDGINS, C. J., delivered the opinion of the court.

Two decisive questions are raised on this appeal—one is the construction of the pertinent clause of Henry C. Roper's will, the other is whether the two five thousand dollar legacies therein bequeathed, with certain limitations, to LeRoy R. Love and John M. Love have been substituted or converted by the act of the parties from personalty into realty. The decision of both questions turns upon the facts, which are substantially as follows:

Henry C. Roper, a bachelor, by his will probated on February 7, 1910, in the Hustings Court of the City of Petersburg, Virginia, disposed of a large estate. The pertinent part of the will is the clause by which he gave his nephews ten thousand dollars in the following language:

"To my nephews John Marion and LeRoy R. Love I leave each Five Thousand Dollars, one to heir from the other and should they leave no living heir of their body, the (Ten Thousand Dollars left them) shall go to Paul Roper, Bartlett Roper, D'Arcy Roper and Phil Roper, sons of my brother Bartlett Roper and to Wilson Roper, son of my brother, Preston L. Roper."

When the will was probated the two Love brothers were young and unmarried. They owned in fee as tenants in common a building and lot designated as No. 115 North Sycamore Street, Petersburg, Virginia. LeRoy R. Love was a non-resident of Virginia, living in the state of Utah. John M. Love had just graduated from Johns Hopkins University and was living in Norfolk, Virginia.

The executors of the will of Henry C. Roper, before paying either of the legacies, instituted, in the Hustings Court of the City of Petersburg, a suit against all the legatees. Unfortunately, the papers in this suit have been lost and the only record available is a decree bearing date January 21, 1911, recorded in the chancery order book. It is stated in the decree that the cause was heard on the bill, taken for confessed as to certain of the adult defendants, the joint and separate answer of Paul Roper, Bartlett Roper, Jr., D'Arcy W. Roper and Philip R. Roper, the answer of the infant defendant, Willson Roper, and his guardian ad litem, and the joint and separate answers

of LeRoy R. Love and John M. Love filed by leave of court. The decree continued in the following language: "On consideration whereof, and it appearing to the court from the answer of the said defendants, LeRoy R. Love and John M. Love, *that they desire the sum of ninety-five hundred (9500) dollars, the amount of the legacies* left them by the said Henry C. Roper, deceased, by his said will, after deducting therefrom the sum of five hundred (500) dollars, the amount of the collateral inheritance tax of five (5) per cent due thereon to the State of Virginia, *be invested in that certain lot or parcel of land, with the buildings thereon . . . ."* After describing Lot No. 115 North Sycamore Street, Petersburg, Virginia, in detail the decree continued: "the court doth adjudge, order and decree that the said Bartlett Roper and Preston L. Roper, executors of the said Henry C. Roper, deceased, *invest* the said sum of ninety-five hundred (9500) dollars in the *purchase of said lot or parcel of land* hereinbefore mentioned and described; said lot or parcel of land to be conveyed to Preston L. Roper, Trustee, *and the same to be held by said Trustee according to the terms and provisions of the will of the said Henry C. Roper, deceased."* (Italics added)

Pursuant to this order of the court the Love brothers by deed bearing date January 23, 1911, conveyed the lot to Preston L. Roper, Trustee, upon the terms and conditions set forth in the decree. It is expressly stated in the deed that *"The said property hereby conveyed* is to be held by the said Preston L. Roper, Trustee, according to the hereinbefore mentioned terms and provisions of the will of the said Henry C. Roper, deceased." (Italics added)

LeRoy R. Love died in 1924, survived by his widow, Frances Cooper Love, to whom he willed all his property. *He left no living heir of his body.*

On June 5, 1948, John M. Love and the then surviving Roper nephews and the successors in title of those who had died, united in a motion to the court for the appointment of G. C. Wilson, substituted trustee, in the place and stead of Preston L. Roper, deceased, to hold Lot No. 115 North Sycamore Street in accordance with the terms and conditions of the will of Henry C. Roper. It is stated in the order that ". . . . it appearing to the court that all of the parties interested in the execution of the trust have had reasonable notice of the filing of said petition and the motion to appoint a substituted trustee, the court doth accordingly order that G. C. Wilson be and he hereby is appointed Trustee under the will of Henry C. Roper for the benefit of John M. Love and others in the place and stead of

Preston L. Roper, Trustee, deceased, with all the power and subject to all the duties and obligations of the original trustee therein." Neither the wife of John M. Love nor the widow of LeRoy R. Love were parties to the motion requesting the appointment of the substituted trustee.

On June 12, 1948, G. C. Wilson, Trustee, and John M. Love, with the consent and approval of the then owners of the contingent remainders, leased the lot to Ralph M. Levy for a term of five years, terminating on June 30, 1953. In this lease the lessee was given the privilege or option of renewing the lease for an additional five years. This option has been exercised and the lessee has given the required notice that he desires to rent the property through June, 1958.

John M. Love died in 1952, survived by his widow, Grace Eloise Love, to whom he willed all his property. *He left no living heir of his body.*

This suit was instituted by D'Arcy W. Roper and the successors in title of the three remaindermen who had died, against Willson B. Roper and G. C. Wilson, Trustee, to determine the respective rights of the parties in lot No. 115 North Sycamore Street, and for distribution of the rents and profits collected therefrom by the trustee since the death of John M. Love. The widows of LeRoy R. Love and John M. Love were not made parties. However, with the permission of the court, they filed a petition in the cause in which they claimed that as widows and sole beneficiaries under the wills of their respective husbands they were the owners in fee of the lot and charged that the deed executed by their husbands bearing date January 23, 1911, conveying the property to Preston L. Roper, Trustee, was null and void and constituted a cloud upon their title and praying that it be removed; in the alternative, they alleged and charged that the said deed was a simple deed of trust executed to secure the repayment of the ninety-five hundred dollar legacy to the trustee in the event both the Love brothers should die leaving no issue of their bodies; their alternative prayer being that upon payment by them of the ninety-five hundred dollars, with interest since the date of the death of John M. Love, the said deed be released and they be declared the owners in fee of the lot.

The trial court held that Grace Eloise Love and Frances Cooper Love had no right, title or interest in the lot and entered a decree sustaining a demurrer to the petition. Grace Eloise Love and Frances Cooper Love were awarded this appeal to review that decree.

■ Appellants' statement of their contention is as follows:

"The Petitioners Love seek but one objective, i.e., to reimburse the defendants Roper if the legacy to their husbands was a defeasible estate, or if not to have it determined as an outright gift under the doctrine of survivorship—'one to heir from the other' and in either event to maintain their ownership in fee simple and as tenants in common to the property which their husbands gave as security, among themselves and to meet any eventual contingency occasioned by the legacies to them."

If the doctrine of survivorship is applicable, then on the death of Leroy R. Love his interest in the legacy passed to John M. Love as survivor, leaving no interest therein to pass to the widow of LeRoy R. Love. In any event appellants' contentions ignore that part of the will which provides that "should they leave no living heir of their body, the (Ten Thousand Dollars left them) shall go to" certain named nephews.

We have held in numerous cases that such words of limitation create a defeasible estate which terminates upon the happening of the contingency, in this case the dying of both the Love brothers without heirs of their body. Code § 55-13. *Trice* v. *Powell,* 168 Va. 397, 191 S. E. 758; *Rinker* v. *Trout,* 171 Va. 327, 198 S. E. 913; *Peoples National Bank* v. *Crickenberger,* 159 Va. 264, 165 S. E. 412. It was held in *Carter* v. *Kessling et al.,* 130 Va. 655, 108 S. E. 708, that a defeasible estate may be created in personalty as well as in realty. In fact, appellants virtually conceded during the oral argument that the Love Brothers took a defeasible estate in the $10,000.00 legacy.

■ Before appellants can establish a valid claim to the lot, or any interest therein, it is incumbent upon them to set aside or eliminate the decree of January 21, 1911, entered in the suit of the Executors of Henry C. Roper's will against his legatees and the deed bearing date January 23, 1911, executed by their husbands, the Love Brothers, conveying the lot to Preston L. Roper, Trustee.

This they attempt to do by claiming that the executors were not authorized by the will of Henry C. Roper to invest the money legacies in real property and that the Hustings Court of the City of Petersburg had no power or jurisdiction to authorize or permit the executors to make such an investment. They also claim that the deed conveying the property to Preston L. Roper, Trustee, should be construed as a mere deed of trust securing the repayment of the legacy in the event that both the Love brothers died leaving no bodily heir surviving.

Neither claim is supported by the facts or justified by the language used in the instruments.

In January, 1911, the Love brothers were young, unmarried and possessed of some means. A young man so situated has expectation of marrying and being survived by one or more children. Where two young men are involved, as in this case, the expectation of at least one to marry and have children is very much higher. They owned lot No. 115 North Sycamore Street in fee. They owned a defeasible estate in $10,000.00. They at that time had a right to sell or give away the lot or the legacies without the impairment, or invasion of any right of their future wives.

The widows of the Love brothers acquired no marital rights to the lot in question. Their claim to the lot necessarily is based upon the fact that each is the sole beneficiary under the will of her husband. If the husbands prior to their respective marriages alienated the lot by substituting it for the cash legacies, their widows as their devisees have no legal ground upon which to base their claim.

There is no allegation or suggestion that the question of fraud, misrepresentation, mistake, unfair dealing or inequitable conduct induced the entry of the decree of January 21, 1911, or the execution of the deed of January 23, 1911. It appears that the building on the lot is rented for $3,000.00 per annum and that it is worth more than $10,000.00. Appellants say that it will work an undue hardship upon them to deny them the right to recover neither the $10,000.00 legacy nor the lot. However, it is to be remembered that this situation was created prior to their entrance upon the scene, that is, prior to their respective marriages. The right of the Love brothers to the legacies never became absolute, as neither left a living heir of his body. They, with full knowledge of this limitation, voluntarily substituted the lot for the legacies. The two instruments mentioned (the decree and deed of 1911) deprived the Love brothers of a clear title to the lot and made it practically impossible for them to sell or use it as security for a loan.

If in 1910 the executors of Henry C. Roper's will had a reasonable doubt as to how, to whom and in what manner they should distribute the estate among the legatees and devisees it was their right and privilege to seek the advice and guidance of a court of chancery. The true intent and meaning of the language used by the testator in bequeathing the $10,000.00 is not crystal clear and is subject to several interpretations. The executors did enter a suit against the legatees,

but without an opportunity to examine all the papers in the cause it is impossible to ascertain the full scope of the relief sought. However, it affirmatively appears from the decree entered in the cause that the Love brothers in their answers asked the court to direct the executors to invest the net amount of their legacies in the lot in question and that the same be held by a trustee to be designated by the court upon the same terms and conditions that the money legacies were directed to be held by the will of Henry C. Roper. All of the then interested parties were before the court and joined in the request, which the court granted. The court had jurisdiction of all the parties and the subject matter. Its decree was not only binding upon the parties but upon all who claim through or under them.

Two days after the decree was entered, that is, on January 23, 1911, the Love brothers voluntarily and intentionally executed the deed, in which specific reference was made to the terms and conditions of the decree of January 21, 1911, whereby they conveyed the lot to Preston L. Roper as Trustee and expressly stated in the deed that the "said property", that is, lot No. 115 North Sycamore Street, "is to be held by said Preston L. Roper, Trustee, according to the hereinbefore mentioned terms and provisions of the will of Henry C. Roper, deceased." After the execution and delivery of this deed the Love brothers received the $9500.00. Their subsequent dealings with the lot were consistent with the fact that they had voluntarily substituted it for the legacies and for it to be held under the same terms, conditions and limitations stated in the pertinent clause of Henry C. Roper's will.

This is not a contest between a seller and a purchaser for value. It is a contest between donees. It is not necessary to invoke the doctrine of equitable conversion. The facts show an actual, completed transaction, as complete a transmutation of personalty into realty as could possibly be conceived, a transmutation to which all the interested parties agreed. See *Ex Parte Lowrance*, 130 S. E. 343, 133 S. C. 103; 18 CJS Conversion § 8, p. 48.

It affirmatively appears from the pleadings that appellants have no interest in the lot.

The decree is

*Affirmed.*

EGGLESTON and BUCHANAN, JJ., dissenting.

BUCHANAN, J., dissenting:

This case was decided on the pleadings. The court below sustained the appellees' demurrer to the appellants' petition and dismissed it. All we know about the transaction now must be gained from the allegations of the petition, the will, the decree, the deed of trust, the petition for substituting a trustee and the decree making that substitution. We do not know, for example, the age of the two Love brothers when their uncle's will was probated, or what their expectations were about marrying and having children, or what their financial condition was when they made the deed, or what the property was worth then or now, or what were the allegations and purposes of the suit which resulted in the decree. As appellees say in their brief, "it is speculation to say definitely what its full scope was." No evidence has been taken.

We do know that by their uncle's will the Love brothers were given $10,000, $5,000 to each, limited to each for life in event he died without heirs of his body, and limited to both for life if both died without such heirs.

In such case, "the legatee for life is not entitled to possession of the *corpus*, but only to the profits, and it is the duty of the executor to *invest the fund* [italics added] and hold it in trust until the termination of the life estate, unless, as was the case in *Mason* v. *Jones*, 26 Gratt. 271, a different intention appears from the will." *Hawthorne* v. *Beckwith*, 89 Va. 786, 791, 17 S. E. 241, 243; *Collins* v. *Hartford Acci., Etc., Co.*, 178 Va. 501, 512, 17 S. E. 2d 413, 417; 1 Harrison on Wills and Administration, § 250 (4) (5).

It is to be presumed that the executors of Henry C. Roper's will were advised of this rule and endeavored to follow it in the suit they brought in which the decree of January 21, 1911, was entered, by which the court ordered the executors "to invest" the $9,500 in the purchase of the property and that it be conveyed to a trustee to be held "according to the terms and provisions of the will of the said Henry C. Roper, deceased."

Pursuant to this decree the deed was made and the property was conveyed by the Love brothers to the trustee to be held "according to the hereinbefore mentioned terms and provisions of the will of the said Henry C. Roper, deceased." The "hereinbefore mentioned" terms and provisions of the will were that Henry C. Roper had bequeathed to the Love Brothers $5,000 each "one to heir from the other," and if they died leaving no heirs of their body, the $10,000 was to go to the other named nephews.

The appellants' petition alleged alternatively that this deed of trust was made to indemnify the executors and save them harmless in turning this money over to the Loves if it should turn out, as it did, that they were entitled to it only for life.

Certainly the deed from the Loves to the trustee was a deed of trust. The trust expressed in it was that the property was to be held by the trustee according to the terms of the Roper will. Those terms were that if the contingency happened, *i.e.*, if the Love brothers died without heirs, the $10,000 left to them was to go to the other five named nephews. The court holds that by this deed of trust the Loves substituted this property for the $10,000 and that the land conveyed by the deed in trust was to take the place of the money and pass as land under the will to those to whom the money was given. That decision must rest on the limited recitals of a decree entered in a suit in which no other papers have yet been found, and upon a deed of trust in which the terms of the trust stated are only that the property is to be held according to the terms of the will, and the terms of the will were that if the Love brothers died without heirs, the $10,000, not the property in which it had been invested by the executors, should go to the named nephews.

I disagree with the statement in the court's opinion that before the appellants can establish a valid claim to the property described in the deed of trust, they must set aside or eliminate the decree of January 21, 1911. The question here is not whether it was a valid decree but what was the purpose of that decree and what was the trust upon which the property was conveyed to the trustee, whether to secure the payment of the money to those who would eventually become entitled to it, or, as claimed by the appellees and as held by the court, to substitute the land for the money. If the latter was intended, it would have been easy to say so in the decree and in the trust deed. The words used in the decree and in the trust deed do not say that and do not necessarily mean that.

As I see it, the terms of the trust upon which the Loves conveyed this property to the trustee are at least of doubtful meaning and in such case evidence is admissible to show the situation of the parties, the surrounding circumstances and the contemporaneous and subsequent acts of the parties in relation to the property involved to aid in determining what was meant by what was written. 19 Mich. Jur., Trusts and Trustees, §§ 17, 21; 90 C.J.S., Trusts, § 165, p. 34; 54 Am. Jur., Trusts, § 17, p. 34.

Evidence could disclose the kind and character of the property, give some idea of its value now and probably at the date of the trust deed, and show other facts and circumstances that would be helpful in determining whether the purpose of the deed of trust was to secure the payment of the money given by the will to the ultimate legatees, or whether the property, which now rents for $3,000 a year, was intended to take the place of the $10,000 and passed under the will to those who were given the money.

I would reverse the decree and remand the case for the taking of proper evidence.

EGGLESTON, J., joins in this dissent.