## CIRCUIT COURT OF THE CITY OF NORFOLK

Stephanie Gale Martone,
a minor, etc.

v.

Joan D. Martone et al.

December 5, 1997

Case No. (Chancery) CH97-911

BY JUDGE CHARLES E. POSTON

Today, the court sustains the demurrer of Joan D. Martone and dismisses this suit in its entirety with prejudice. This suit in the nature of *devisavit vel non* concerns the estate of the late Dr. Alexander L. Martone.

Two related suits have preceded the instant cause. On December 9, 1994, Dr. Martone's children filed a petition praying that Dr. Martone be declared incompetent and that a guardian of his person and property be appointed. Dr. Martone retained counsel and vigorously contested that suit. A guardian *ad litem* was appointed for Dr. Martone, and medical evaluations were ordered. The issue of his competency became moot when he suffered a stroke which obviously disabled him. At that point, there was no longer any issue concerning his competency, and the court appointed Alan Mirman, Esq., and First Union Bank as co-guardians of his property, and Joan D. Martone as guardian of his person.[1] Dr. Martone died on June 6, 1996. The course of litigation continued when Joan D. Martone filed an "Application for Quasi Inter Partes Probate" of a writing dated March 3, 1995 (the probate proceeding).

---

[1] After Dr. Martone's death, the court awarded the children attorney's fees for this proceeding from Dr. Martone's estate. Upon Joan D. Martone's petition for appeal, the Supreme Court awarded her an appeal, and the matter is now pending there.

By a consent order entered September 6, 1996, the court converted the probate proceeding to an *inter partes* proceeding pursuant to Virginia Code § 64.1-80, et seq., directed that all interested persons be made parties, and required the production of all testamentary writings of Dr. Martone. Thereafter, two other writings purporting to be wills of Dr. Martone dated April 10, 1991, and February 6, 1995, were filed with the court. Joan D. Martone and Dr. Martone's children were parties to that suit which presented the issue *devisavit vel non* to a jury. The jury, in special interrogatories, found that when Dr. Martone executed the March 1995 will, he possessed testamentary capacity and was not acting under undue influence. On March 14, 1997, judgment was entered upon the verdict, and the March 1995 will was admitted to probate. Thereafter, Dr. Martone's children petitioned the Supreme Court for an appeal, which petition was denied.

It is significant that in the probate proceeding, Joan D. Martone was the proponent of the March 1995 will and, alternatively, of the February 1995 will. Each of those documents named her executrix. Dr. Martone's children, in turn, were the proponents of the 1991 will. That will, which gave almost all of Dr. Martone's estate to an *inter vivos* trust of which Peter W. Martone was trustee, named Peter W. Martone executor. It is significant to note that the plaintiff in the suit at bar is the minor daughter of Peter W. Martone. All of Dr. Martone's children, grandchildren[2] (with the exception of the plaintiff), and great-grandchildren[3] are represented in the instant suit by the same attorneys who represented the children in both the guardianship and probate proceedings. Joan D. Martone, likewise, is represented by the same attorneys who represented her in those preceding suits.

In the probate suit, Dr. Martone's children urged that the two 1995 wills were invalid because at the time of execution, Dr. Martone lacked testamentary capacity *and* because he was acting under the undue influence of his wife, Joan D. Martone.[4] In the instant proceeding, the same three wills are in contest, and the plaintiff seeks a determination of the same issue, *devisavit vel non*. The plaintiff asserts in the instant suit that the 1991

---

[2] Jeffrey Martone; Lisa Martone; Susan Kelly Martone; Peter W. Martone, Jr.; Stephanie Gale Martone, a minor; Michael V. Martone; Justin A. Martone; David R. Nelson; Bridgete M. Nelson; Jennifer E. Nelson; Christopher A. Nelson; and Bradford P. Nelson.

[3] Megan Martone, a minor; Amanda Martone, a minor; and Kavin Nelson, a minor.

[4] Dr. Martone's first wife, the mother of his children, had died some years earlier.

will is the only valid document because, she says, Dr. Martone executed both 1995 wills under the undue influence of Joan D. Martone.

Under the 1991 will, Dr. Martone leaves his estate to his trustee, Peter W. Martone. The only provision in that will for his relatives is found in Article V(b):

> Any net income collected from assets held by my Executor during the period of administration of my estate may, in whole or in part, *in the sole discretion of the Executor,* be distributed to any one or more person or persons, to the permissible exclusion of any one or more of them, *within a class consisting of my wife and my issue* . . . .

(Emphasis supplied.) Article VIII of the trust agreement, executed on the same day Dr. Martone signed his 1991 will, provides instructions to the trustee that upon Dr. Martone's death, the trust property:

> shall be held and/or distributed as I shall have designated in written instructions addressed to you (including the survivor of you or any successors to you) which you, *in your sole opinion,* believe to be genuine . . . .

(Emphasis supplied.) Article VIII further provides that any trust property for which Dr. Martone had made no instructions at his death would be distributed as if Dr. Martone had died intestate and unmarried. There are no specific provisions for Dr. Martone's descendants in the 1991 will or in the accompanying trust document.

The plaintiff and all defendants, except Joan D. Martone, seek the same relief in the instant suit upon the same grounds litigated in the probate proceeding. Joan D. Martone demurs to the Bill in Equity and to the cross-bills on a number of grounds. All parties have filed memoranda of law addressing the issues presented in the demurrer.

Res judicata is a classic doctrine that bars relitigation of a cause of action by the same parties or their privies. In *Bates v. Devers,* 214 Va. 667 at 670 (1974), the Supreme Court said:

> *Res judicata-bar* is the particular preclusive effect commonly meant by the use of the term "res judicata." A valid, personal judgment on the merits in favor of defendant bars relitigation of the

*same cause of action*, or any part thereof which could have been litigated, between the same parties and their privies.

*Accord, Straessle v. Air Line Pilots' Ass'n*, 253 Va. 349 (1997).

A defendant who asserts the bar of res judicata bears the burden of proving by a preponderance of the evidence that she has obtained a valid judgment in her favor. *Straessle*, 253 Va. at 353.

She must establish the identity of the remedies sought, the identity of the cause of action, the identity of the parties, the identity of the quality of the persons for or against whom the claim is made, and that a final judgment on the merits has been reached by a court of competent jurisdiction. *See Wright v. Castles*, 232 Va. 218, 222 (1986); *Storm v. Nationwide Mutual Insurance Co.*, 199 Va. 130, 134 (1957); *accord, Commonwealth ex rel. Gray v. Johnson*, 7 Va. App. 614, 618 (1989).

Collateral estoppel, on the other hand, is somewhat different, although the preclusive effect is the same.

*Collateral estoppel* is the preclusive effect impacting in a subsequent action based upon a collateral and *different cause of action*. In the subsequent action, the parties to the first action and their privies are precluded from litigating any *issue* of fact actually litigated and essential to a valid and final personal judgment in the first action.

*Bates*, 214 Va. at 671.

The doctrine of res judicata is a bar to further litigation by the parties or their privies based on the same cause of action. One seeking to preclude litigation on the basis of res judicata must establish three elements: (1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suits, and (3) an identity of the parties or their privies in the two suits. 21A Michie's Jurisprudence, *Words and Phrases*, "Res Judicata" at 152 (1997) (*citing In re Grimm*, 168 Bankr. 102 (Bankr. E.D. Va. 1994)). In both the case at bar and the earlier probate proceeding, the issue framed is the same: which of the writings is the last will and testament of Dr. Martone. In the present suit, the plaintiff alleges that the 1995 will was procured because of the undue influence of Joan Martone. That identical issue was litigated in the probate proceeding. Joan Martone and all of Dr. Martone's children were parties to the probate proceeding and to the present suit.

The Bill in Equity prays "[t]hat the issue *devisavit vel non* be framed and tried by a jury to determine which of the writings filed with the Court in Probate No. 585-96 is the true last will and testament of Alexander L. Martone." It is undisputed that in such suits, "the sole issue is whether the paper offered for probate is or is not the will of the decedent. When this question is decided, the function of the suit is exhausted . . . ." 20 Michie's Jurisprudence, *Wills*, § 59 at 283 (1993). Thus, in both suits, there was identity of parties, insofar as Joan Martone and Dr. Martone's children are concerned, and identity of the issue. There was a final judgment on the merits in the probate proceeding, and upon that judgment, the Supreme Court has denied an appeal.

The court finds that Joan Martone, Joseph Martone, Peter W. Martone, Alexander L. Martone, Jr., and Sharon M. Nelson are barred by the doctrine of res judicata from relitigating the validity of the 1995 will.

Not only does res judicata preclude further litigation of the same claims by the parties to an earlier suit as discussed above; it also binds all those in privity with those parties. Therefore, if the remaining parties, that is, the grandchildren and great-grandchildren of Dr. Martone, were in privity with their ancestors who were parties to the probate proceeding, they, too, are barred from litigating the issues presented in the suit at bar. The question, then, is whether the descendants of Dr. Martone's children are in privity with their ancestors with respect to the probate proceeding.

There is no "bright line" rule to determine whether one is in privity with another. The present cause of action is identical to that in the probate proceeding. The plaintiff's allegation that Dr. Martone executed the latter two wills while under the undue influence of Joan Martone was specifically litigated and decided in the probate proceeding. Since there is no *different* cause of action here, the court concludes that collateral estoppel is inapplicable to the instant suit. The Supreme Court has stated:

> There is no fixed definition of privity that automatically can be applied to all cases involving res judicata issues. While privity generally involves a party so identical in interest with another that he represents the same legal right, a determination of just who are privies requires a careful examination into the circumstances of each case.

*Nero v. Ferris*, 222 Va. 807, 813 (1981). Although the Supreme Court appears not to have addressed the question directly, the prevailing view seems to be that the child-parent relationship does not, of itself, establish

privity. *See, Commonwealth ex rel. Gray*, 7 Va. App. at 620. Thus, whether the descendants of Dr. Martone's children are in privity with them with regard to these suits must be determined without consideration of the descendants' lineage. Privity has been further defined, however:

> It is generally held that "privity" means a mutual or successive relationship to the same rights or property, or such an identification in interest of one person with another as to represent the same legal rights, and the term "privy," when applied to a judgment or decree refers to one whose interest has been legally represented at trial.

*See Kesler v. Fentress*, 223 Va. 14, 17 (1982); *Spiker v. Capitol Milk Producers Coop.*, 577 F. Supp. 416 (W.D. Va. 1983).

The 1991 will which Dr. Martone's lineal relatives seek to have declared his last will and testament makes no mention by name of any of his descendants as beneficiaries. There is a reference to the general category of his "issue." Although Joan Martone asserts that the word should be construed to mean only his children, that assertion cannot prevail. "Issue" was defined at common law as meaning one's lineal descendants. *See, Hyman v. Glover*, 232 Va. 140, 142-143 (1986). If the grandchildren and great-grandchildren were to share in Dr. Martone's estate by intestacy, they would, of necessity, take through their parents, the children of Dr. Martone. In her Bill in Equity, the plaintiff quotes from Article V(b) of the 1991 will the only reference to beneficiaries other than the trustee:

> Any net income collected from assets held by my Executor during the period of administration of my estate may, in whole or in part, *in the sole discretion of the Executor*, be distributed to any one or more person or persons, to the permissible exclusion of any one or more of them, within a class consisting of my wife and my issue . . . .

(Emphasis supplied.) Obviously, the plaintiff and all defendants are within the defined class and are equal members of the class. It is difficult to imagine parties more closely aligned in interest with each other. The court is of the opinion that Dr. Martone's grandchildren and great-grandchildren are privies with respect to the probate proceeding.

The present cause of action is identical to that in the probate proceeding. The plaintiff's allegation that Dr. Martone executed the latter two wills while under the undue influence of Joan Martone was specifically litigated

and decided in the probate proceeding. Since there is no *different* cause of action here, the court concludes that collateral estoppel is inapplicable to the instant suit.

The court finds that with respect to the plea of res judicata, the remedy sought in the instant suit is identical to that litigated in the probate proceeding; that the cause of action is identical; that the parties are identical because the grandchildren and great-grandchildren are privies of the children of Dr. Martone; and that a final judgment has been rendered on the merits. On this basis, the demurrer is sustained, and the bill in equity is dismissed with prejudice.

Joan Martone further alleged in her demurrer that the doctrine of virtual representation should be applied in this case. Virtual representation, a concept closely related to the plea of res judicata, appears first to have been addressed by the Supreme Court in 1856 in *Baylor's Lessee v. Dejarnette*, 54 Va. (13 Gratt.) 152 (1856). This case explained the concept as follows:

> It would certainly be very unreasonable and unjust that a party having a charge upon an estate affecting the whole fee should be delayed or embarrassed in enforcing it by reason of limitations by way of remainder to persons whom it might be impossible or improper to make parties to the cause. To obviate the difficulty in such cases, the doctrine of virtual representation has been introduced, according to which certain parties before the court are regarded as representing those coming after them with contingent interest who therefore it is not required should be made parties.

*Id.* at 166. The Supreme Court last referred to virtual representation in *NationsBank v. Estate of Grandy*, 248 Va. 557 (1994). That case involved a dispute concerning an order authorizing the invasion of the principal of a testamentary trust to satisfy the debts of an incapacitated beneficiary with substantial personal assets. On appeal, one issue was whether the trial court had erred in not joining all necessary parties. It was argued that the contingent beneficiaries and vested remainder beneficiaries of the trust were necessary parties to the suit. The court disposed of that issue in the following language:

> As a general rule, the interest of a contingent beneficiary can be represented by another contingent beneficiary under the doctrine of "virtual representation" where their interests are sufficiently similar to insure adequate representation. In this case, Charles R.

Grandy, his living and potential issue, and the unborn issue of Ms. Grandy all share similar interests in the residue of the trust upon Ms. Grandy's death. As a result, the interests of Ms. Grandy's or her brother's unborn issue were adequately represented by Charles R. Grandy and Chamie Grandy Valentine. Furthermore, the interests of the potential beneficiaries are too remote to require the joinder of those potential beneficiaries as necessary parties.

*Id.* at 560 (citations omitted). It has also been said that "in no case is it necessary to make those persons parties who are entitled only to future and very uncertain contingent interests." *Hawthorne v. Beckwith*, 89 Va. 786, 789 (1893).

Here, the grandchildren and great-grandchildren will take under the 1991 will only from the income from the estate while in the hands of the executor before he transfers the assets to the trustee. However, there is a further qualification. They will take only if the executor, in his sole discretion, decides to make such distributions, and even then he may distribute to some, but not all, in such amounts and proportions as he, in his sole discretion, deems appropriate. There is no mandate for the executor to make any distributions at all.

Harrison gives the following definitions which state Virginia law on the nature of interests in an estate:

An estate is vested when there is an immediate right of present enjoyment or a present fixed right of future enjoyment . . . . A contingent interest is one in which there is no present fixed right of either present or future enjoyment, but in which a fixed right of either present or future enjoyment will arise in the future under certain specified circumstances. Thus, it is said that a vested interest is one the right to whose enjoyment, either present or future, is not subject to the happening of a condition precedent, but a contingent interest is one the right to whose enjoyment is subject to the happening of a condition precedent.

*Harrison on Wills*, § 366. Perhaps the possibility of least importance with respect to interests is an expectancy, which is defined as follows with respect to an estate in land:

At most it is a mere hope or expectation, contingent upon the will and pleasure of the landowner, and hardly reaches the height of a

property right, much less a vested right, because where there is no obligation, there is no right. It is a possibility for which a party may under certain circumstances properly hope for or expect.

*Black's Law Dictionary*, 5th ed.

It is obvious that the interests of the grandchildren and great-grandchildren are contingent upon the will and pleasure of the executor. It is likewise unmistakable that there is no obligation under the 1991 will for the executor to distribute anything to anyone. Where, then, is the obligation? Where, then, is the right? Neither exists. Any interest these parties may have cannot rise above the level of a mere expectancy.

By application of the doctrine of virtual representation, the court finds that all parties to the instant suit who were not named parties to the probate proceeding were fully represented in that suit by their ancestors, the children of Dr. Martone. The interests of these descendants of Dr. Martone were not only similar but were indeed identical to those of Dr. Martone's children. Thus, they are precluded from further litigation in the suit at bar. On this basis, the demurrer is again sustained, and the bill in equity dismissed with prejudice.